IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL G. WOLFF, | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. AW-12-cv-00500 |
| RODGERS CONSULTING, INC., | * | |
| Appellee. | * | |
| | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**<u>Memorandum Opinion</u>**

This matter is before the Court on the appeal of Michael G. Wolff (the "Trustee"), from an order of the United States Bankruptcy Court for the District of Maryland dismissing the Trustee's Complaint against Rodgers Consulting, Inc. ("Rodgers") for Avoidance and Recovery of Preferential Transfer. Specifically, the Trustee claims that the Bankruptcy Court erred in finding that the Trustee had not presented sufficient evidence to prove one of the necessary elements of a preferential transfer, that is, a transfer of an interest in the property of the debtor. The Court has reviewed the motion papers and finds that the facts and legal contentions are adequately presented and no oral argument is necessary. For the reasons articulated below, the Bankruptcy Court's order will be AFFIRMED.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On January 11, 2011, an Involuntary Petition for relief under Chapter 7 of the United States Bankruptcy Code was filed against GHGAB at Frederick, LLC (the "Debtor"). The Trustee commenced this adversary proceeding on May 23, 2011, seeking to avoid the transfer of a $75,000 payment made by Rocky Gorge Development, LLC ("Rocky Gorge") to Rodgers

allegedly for the benefit of the Debtor, so as to recover the $75,000 for the Debtor's bankruptcy estate.

This case centers around a payment of $75,000 made to Rodgers on October 18, 2010, from a Branch Banking and Trust Company ("BB&T") account in the name of Rocky Gorge, a real estate developer. The funds were transferred to Rodgers pursuant to a contract between Rocky Gorge and Rodgers, in which Rodgers provided planning and engineering services for Rocky Gorge for the improvement of a Frederick, Maryland property. Rocky Gorge is the managing member of the Debtor, and the Court understands that the Debtor was created solely to develop the Frederick property.

There is no dispute that the $75,000 payment to Rodgers was drawn on Rocky Gorge's BB&T account rather than on the Debtor's BB&T account. In fact, the Debtor's BB&T statements do not show $75,000 ever having been in the Debtor's account. The parties also agree that it was Rocky Gorge, rather than the Debtor, that placed the $75,000 in Rocky Gorge's BB&T account prior to paying Rodgers. Additionally, the Debtor was not a party to the contract between Rodgers and Rocky Gorge and the contract had not been assigned to the Debtor. Given these facts, it is clear that Rocky Gorge, and not the Debtor, undertook the physical act of writing the $75,000 check and paying Rodgers.

However, the Trustee contends that the $75,000 Rodgers was paid belonged to the Debtor, due to the fact that Rocky Gorge had loaned those funds to the Debtor prior to making payment to Rodgers. On January 18, 2012, the Debtor's attorney Alan Eisler testified before the Bankruptcy Court that the $75,000 transferred to Rodgers had belonged to the Debtor rather than Rocky Gorge. Mr. Eisler testified that he had reviewed the BB&T accounts of the Debtor and Rocky Gorge as part of preparing the schedules and Statement of Financial Affairs for the

Debtor in bankruptcy. Crucially, however, Mr. Eisler acknowledged that he had not personally set up the BB&T accounts for either the Debtor or Rocky Gorge, meaning that he had no personal knowledge as to the Debtor's control over and authorization to withdraw funds from Rocky Gorge's BB&T account. Mr. Eisler testified that Rocky Gorge had made two loans to the Debtor: a capital contribution loan of $1,872,424.40 and a working capital advance of $86,000, to cover the Debtor's operating expenses. Mr. Eisler testified that the $75,000 Rocky Gorge had put in the Rocky Gorge BB&T account had actually been parked there as part of the $86,000 advance to the Debtor. As such, the Trustee argued that the $75,000 payment to Rodgers was effectively a payment from the Debtor to Rodgers, which reduced the amount that the Debtor owed to Rocky Gorge by $75,000 by reducing Rocky Gorge's obligation to Rodgers by $75,000.

Other than the testimony of Mr. Eisler, there is no real evidence by which the Trustee can prove that the funds in Rocky Gorge's account belonged to the Debtor. As an initial matter, the parties created separate BB&T accounts, and Rocky Gorge placed the $75,000 in its own BB&T account rather than in the Debtor's BB&T account. When the Debtor filed its initial Statement of Financial Affairs, it mistakenly identified Rocky Gorge's BB&T account as its own asset and identified Rodgers as a creditor of the Debtor. Upon realizing that the BB&T account was titled in the name of Rocky Gorge and that Rodgers had contracted with Rocky Gorge rather than the Debtor, the Trustee amended the schedules to reflect that Rodgers was not in fact a creditor of the Debtor and that Rocky Gorge's BB&T account was not an asset of the Debtor. The amended schedules reflect a claim by the Debtor to the $34 remaining in Rocky Gorge's BB&T account, but do not reflect a claim against Rocky Gorge for the $75,000 of the Debtor's funds allegedly used to pay Rodgers. Although Mr. Eisler testified that the $75,000 payment made to Rodgers reduced the Debtor's obligation to Rocky Gorge by $75,000, neither the original nor the

amended schedules of the Debtor reflect a reduction of the Debtor's obligation to Rocky Gorge by $75,000.

After Mr. Eisler's testimony concluded, the Bankruptcy Court ruled in favor of Rodgers. The Court held that the Trustee had failed to meet his burden of proving under 11 U.S.C. §547(b) that the $75,000 transfer to Rodgers was a "transfer of an interest of the debtor in property." The Court noted that although Mr. Eisler had testified that the funds in Rocky Gorge's account belonged to the Debtor, Mr. Eisler had no personal knowledge of this fact. The Court accordingly entered an order in favor of Rodgers, and the Trustee subsequently appealed.

## II.  STANDARD OF REVIEW

On appeal, this Court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. While the bankruptcy court's legal conclusions are reviewed *de novo*, *see In re Hartford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004), "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8013.

## III.  ANALYSIS

The Trustee appeals the Bankruptcy Court's holding that the Trustee failed to meet his burden of proving under § 547(b) that there was a "transfer of an interest of the debtor in property." The Trustee bears the burden of proving the avoidability of a transfer under § 574(b). Section 574(b) provides in relevant part that:

> the trustee may avoid any transfer of an interest of the debtor in property--

>  (1) to or for the benefit of a creditor;
>  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>  (3) made while the debtor was insolvent;
>  (4) made--
>  >  (A) on or within 90 days before the date of the filing of the petition; or
>  >  (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>  (5) that enables such creditor to receive more than such creditor would receive if--
>  >  (A) the case were a case under chapter 7 of this title;
>  >  (B) the transfer had not been made; and
>  >  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The issue in this matter is whether the $75,000 transferred to Rodgers was an "interest of the debtor" or merely the funds of Rocky Gorge to which the Debtor had no legal or equitable title. The Trustee contends that the $75,000 in Rocky Gorge's BB&T account belonged to the Debtor. Mr. Eisler testified that the $75,000 transferred to Rodgers was part of an $86,000 working capital loan Rocky Gorge had advanced to the Debtor. To the extent Mr. Eisler's testimony was accurate, and the $75,000 in Rocky Gorge's account had in fact been set aside as the Debtor's, those sums would have belonged to the debtor and constituted an "interest of the debtor in property." The Bankruptcy Court had no obligation, however, to assume the accuracy of Mr. Eisler's testimony or to disregard other evidence (or lack thereof) supporting that testimony. After considering all evidence, the Bankruptcy Court found that the Trustee had failed to prove that the $75,000 belonged to the Debtor, since the only evidence supporting the Trustee's theory was the testimony of Mr. Eisler, who had not set up the BB&T accounts and had no personal knowledge as to the Debtor's control over and access to Rocky Gorge's BB&T account.

The Trustee contends that the Bankruptcy Court excluded Mr. Eisler's testimony as hearsay *sua sponte* when it determined at the close of the hearing that Mr. Eisler lacked personal knowledge about whether the $75,000 belonged to the Debtor.[1]  The Trustee argues that, had he known during the hearing that the Bankruptcy Court would later exclude Mr. Eisler's testimony, he would have provided the Bankruptcy Court with reasons why the testimony was admissible under an exception to the hearsay rule.

This Court disagrees that the Bankruptcy Court made a hearsay determination or that it excluded Mr. Eisler's testimony.  Rather, it appears the Bankruptcy Court considered Mr. Eisler's testimony *in toto*, weighing his credibility as a "distinguished lawyer who often practices before this Court" with his admitted lack of personal knowledge about the set-up of the BB&T accounts.  It is within the complete providence of the trier of fact to judge the credibility and accuracy of witness testimony and to weigh such testimony accordingly.  Moreover, the Bankruptcy Court had a duty to consider Mr. Eisler's testimony in light of all the other evidence (or lack thereof) in determining whether the Trustee had met its burden of proving that the funds transferred were those of the Debtor.  Given the record before this Court, it appears there was little evidence that the funds in Rocky Gorge's BB&T account belonged to the Debtor other than Mr. Eisler's testimony.  The facts simply show that Rocky Gorge placed $75,000 in its BB&T account and later transferred those funds to Rodgers pursuant to their contract.

This Court declines to disturb the weight accorded Mr. Eisler's testimony by the Bankruptcy Court.  The Bankruptcy Court committed no clear error in finding that Mr. Eisler

---

[1] Specifically, the Bankruptcy Court stated:
> As the support for his complaint, the trustee offered the testimony of Alan Eisler, a distinguished lawyer who often practices before this Court and who was of course the one who consented to the involuntary petition. It was his testimony that while the money came from Rocky Gorge Development, that the funds belonged to the debtor. However, the Court finds that he had no personal knowledge of that fact and for this reason the Court finds that the trustee has not proven one of the necessary elements of the preference complaint, namely that there was a transfer of an interest in the property of the debtor.

6

lacked personal knowledge, as Mr. Eisler admitted to the Court that he had not been involved with setting up the BB&T accounts. In essence, it appears the Trustee was caught off guard by the significance the Bankruptcy Court placed on Mr. Eisler's ability to testify accurately as to the nature of the Debtor's interest and control over the funds in Rocky Gorge's BB&T account. Given that Mr. Eisler was the linchpin of the Trustee's case, however, it should have been apparent that issues of personal knowledge would weigh heavily in the Bankruptcy Court's determination. Accordingly, the Bankruptcy Court did not error in determining that the Trustee failed to meet its burden of proving that the funds transferred to Rodgers belonged to the Debtor.

### IV.     CONCLUSION

Finding neither legal nor factual error in the Bankruptcy Court's ruling, the Court will affirm the Bankruptcy Court's decision. A separate order will follow.

| | |
|---|---|
| May 18, 2012 | /s/ |
| Date | Alexander Williams, Jr.<br>United States District Judge |